IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IAN HAM, by and through his Legal Guardian, SANDRA HAM,<br><br>        Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>        Defendant. | 4:14-CV-3065<br><br>MEMORANDUM AND ORDER |

    The plaintiff, Ian Ham, appeals from a decision of the Social Security Administration (SSA) finding that his special needs trust was a countable resource of sufficient value to require suspension of his supplemental security income (SSI) benefits. The Court has considered the parties' filings and the administrative record, and will affirm the Commissioner's decision.

## BACKGROUND

    Before relating the particular facts of this case, it will help to understand the statutory framework. Under Title XVI of the Social Security Act, "[e]very aged, blind, or disabled individual who is determined . . . to be eligible on the basis of his income and resources shall . . . be paid benefits by the Commissioner of Social Security." 42 U.S.C. § 1381a. But if such a person is unmarried and his or her countable resources exceed $2,000, he or she loses eligibility for SSI benefits. 42 U.S.C. § 1382(a)(3)(B). Some assets are exempt from being counted, however, including special needs trusts as they are defined by 42 U.S.C. § 1396p(d)(4)(A). 42 U.S.C. § 1382b(e)(5). Specifically, a trust is not countable under § 1396p(d)(4)(A) if it is

> [a] trust containing the assets of an individual under age 65 who is disabled . . . and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an

> amount equal to the total medical assistance paid on behalf of the individual under a State [Medicaid] plan . . . .

The plaintiff in this case is a disabled adult who began receiving SSI benefits in 1991. T14. The plaintiff's mother is his legal guardian. T18-21. The plaintiff was injured in an accident at the Beatrice Community Hospital and sued the hospital and a doctor in state court. T33. The hospital and doctor, and their insurer, offered to settle the claim. T33. In August 2011, the county court approved the settlement, which provided for a sum of money to be placed into a special needs trust. T34, T118. The Ian Ham Trust was created for that purpose. T23-31.

The plaintiff's mother was established as the trustee of the Trust. T23. The Trust instrument also expressly named the plaintiff's mother as the grantor of the Trust. T23. As relevant, art. II(f) of the Trust provided that upon the plaintiff's death, the trustee would use the Trust principal to pay the plaintiff's final expenses, then distribute the remaining principal to the plaintiff's heirs. T25. But as required by § 1396p(d)(4)(A), the Trust also provided that notwithstanding art. II(f), "upon the distribution date, the trustee shall reimburse to the State (or other Medicaid payor) all amounts remaining in the trust, up to the total amounts of medical assistance paid, if any, to or on behalf of the beneficiary." T25.

Another provision of the Trust, however, provided for early termination of the Trust under certain circumstances. Art. II(e), titled "Shielding trust from third parties," provided:

> The trustee shall have no power to pay or apply trust income or principal to pay or reimburse any governmental or institutional agency, payor or provider or "public resources". In the event and to the extent (i) any such governmental or institutional agency, payor or provider shall determine, that provisions of this trust are ineffective or are to be disregarded for purposes of determining the beneficiary's eligibility for statutorily provided "public resources" or (ii) a court of competent jurisdiction shall determine . . . that this trust is or may be subject to garnishment, attachment, levy, execution, or bankruptcy proceeding instituted by any creditor against the beneficiary, then, in the trustee's discretion, this trust may thereupon terminate and its then principal shall be distributed free of trust (i) to such one or more persons or tax-exempt charitable organizations as the grantors or the survivor of them or, after the surviving grantor's death, the then acting trustee, shall appoint by written instrument

> delivered to the trustee, or, in default of effective appointment, (ii) in accordance with provisions of [art. II(f)] to such person therein described who shall then be living in the same manner as though the beneficiary's death had then occurred.

T25. That provision is the source of the trouble.

In September 2011, the SSA notified the plaintiff that his SSI benefits would be suspended because he had resources worth more than $2,000. T40. The notice specifically identified the Trust as the asset that exceeded the resource limit. T49. The plaintiff asked for reconsideration. T73. But the SSA regional office found that art. II(e) of the Trust—the early termination provision—did not provide reimbursement to the State for medical assistance upon early termination. T76, T81. Therefore, the Trust was a countable resource. T76-77, T81. So, the SSA denied reconsideration. T78.

The plaintiff asked for a hearing by an administrative law judge (ALJ). T82. Attached to the hearing request form was a letter from plaintiff's counsel, and attached to the letter was a copy of a letter to the plaintiff's mother from the Nebraska Department of Health and Human Services (NDHHS), indicating that a copy of the Trust had been forwarded to NDHHS's "Central Office Program Specialist in Lincoln" and that "they have stated that the trust is an excluded resource." T84-86. And the plaintiff submitted a brief to the ALJ arguing that the Trust was a viable "Special Needs Trust within the meaning of 42 U.S.C. § 1396p(d)(4)(A)." T90.

But, after a hearing, the ALJ concluded that the Trust did not satisfy the requirements for exclusion, and that the plaintiff's SSI benefits were correctly suspended. T14-17. The ALJ found that the early termination clause did not comply with the recapture requirement of § 1396p(d)(4)(A) because the grantor, whom the ALJ found to be the plaintiff's mother, had discretion to dispose of the Trust proceeds in the event of early termination. T16. And the ALJ rejected the plaintiff's argument that the SSA should defer to the decision of the NDHHS regarding the excludability of the Trust, stating that he was not bound by determinations made by separate government entities. T16.

The plaintiff sought review by the Appeals Council of the SSA, which denied the plaintiff's request. T3-9. The plaintiff's complaint seeks review of the ALJ's decision as the final decision of the Commissioner under sentence four of 42 U.S.C. § 405(g). Filing 1.

## STANDARD OF REVIEW

The Court reverses the findings of the Commissioner only if they are not supported by substantial evidence or result from an error of law. *See,*

*Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015); *Rodysill v. Colvin*, 745 F.3d 947, 949 (8th Cir. 2014). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Draper*, 779 F.3d at 559. If substantial evidence supports the Commissioner's conclusions, the Court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome. *Id.* And whether the ALJ based his decision on a legal error is reviewed de novo. *Id.*

## DISCUSSION

At issue is whether the Trust, as originally executed,[1] was an exempt resource pursuant to § 1396p(d)(4)(A), as incorporated by § 1382b(e)(5).[2] As set forth above, a trust is exempt pursuant to § 1396p(d)(4)(A) if it

- contains the assets of an individual under age 65 and who is disabled; and
- is established for the benefit of such individual through the actions of a parent, grandparent, legal guardian, or a court; and
- provides that the State will receive all amounts remaining in the trust upon the death of the individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State Medicaid plan.

*See id.*; *see also* POMS SI 01120.203(B)(1). The Trust fails the final requirement. The recapture provision of the Trust—art. II(g)—is an exception to the distribution-on-death provision of the Trust. Art. II(g) effectively mandates recapture on the plaintiff's death. T25. But if the early termination provision—art. II(e)—is triggered, the grantor may direct distribution to any person or tax-exempt charitable organization chosen by the grantor. If the

---

[1] The plaintiff represents that the Trust has since been amended through the county court, and that the SSA is satisfied with the amended trust provisions. Filing 14 at 3. So the scope of this appeal is limited to potentially past-due benefits.

[2] The plaintiff's counsel refers, at different times, to both § 1396p(d)(4)(A) and § 1396p(d)(4)(B)(ii). For instance, the Trust itself references § 1396p(d)(4)(B)(ii), as does the plaintiff's request for hearing and brief to this Court. *See*, T26, T84; filing 14 at 7-8, 10. But the plaintiff's brief to the ALJ relies upon § 1396p(d)(4)(A). Section 1396p(d)(4)(A) provides for special needs trusts, while § 1396p(d)(4)(B) recognizes income trusts, *i.e.* "Miller trusts." *See Wong v. Daines*, 582 F. Supp. 2d 475, 483 (S.D.N.Y. 2008). Those provisions contain similar-looking recapture requirements, but they are not interchangeable: both special needs trusts and Miller trusts are exempt from counting for Medicaid purposes, but Miller trusts are *not* exempt from counting for SSI purposes. *See* § 1382b(e)(5). So, only § 1396p(d)(4)(A) is relevant here.

trust is terminated early, art. II(f)—and by extension, art. II(g)—is only triggered if the grantor fails to effectively appoint a residual beneficiary.

And the SSA's Program Operations Manual System ("POMS") guidelines provide that for purposes of SSI eligibility, a trust that contains an early termination provision may not be excepted as a resource unless the State would recapture amounts paid for medical assistance upon early termination. POMS SI § 01220.199(F)(1). That interpretation is not unreasonable: an early termination provision that avoided recapture would have the effect of avoiding the statutory requirement of recapture upon the beneficiary's death.[3] And the POMS guidelines interpreting § 1396p(d)(4)(A) are entitled to "relatively strong" deference from the Court. *Draper*, 779 F.3d at 560-62; *see Rodysill*, 745 F.3d at 950; *see also Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385-86 (2003).

The plaintiff offers three arguments for why, he says, the Trust's recapture clause actually applies to the early termination provision. First, he contends that the ALJ should have looked outside the Trust instrument to determine who the "actual grantor" was. Filing 14 at 6-7. Second, he contends that the SSA should have deferred to the determination of the NDHHS that the Trust was an exempt resource. Filing 14 at 7-9. And third, he argues that the plaintiff's mother would be precluded, by her fiduciary duty as the plaintiff's guardian, from avoiding recapture. Filing 14 at 9-10. The Court will address each argument in turn.

### "ACTUAL GRANTOR"

First, the plaintiff contends that the ALJ should have looked outside the Trust instrument to determine who the "actual grantor" or settlor of the Trust was. He argues that the ALJ failed to do that, which he suggests is *per se* error requiring reversal. Filing 14 at 6-7. And he asserts that if the "actual grantor" is determined then, somehow, the Trust is consistent with § 1396p(d)(4). Filing 14 at 7. The plaintiff's argument in that regard is hard to follow, but as best the Court can determine, it goes like this: the early termination provision permits the "grantor" to designate a residual beneficiary in the event of early termination, but if the "grantor" is not the plaintiff's mother—that is, if the grantors are the tortfeasors who were the source of the funds—then they are legally constrained from designating a

---

[3] The statutory text does not specifically address early termination provisions, so the SSA may fill the statutory gap through interpretation. *See Draper*, 779 F.3d at 560. The SSA's construction of the statute is permissible, *cf. id.*, but more importantly, the plaintiff has never argued otherwise—that is, the plaintiff has not asked the Court to consider whether the POMS guidelines regarding early termination provisions are contradicted by the statutory text, so he has waived any argument in that regard.

residual beneficiary. T90. So, if the Trust is terminated early, then the first contingency will always fail, and the fallback contingency, art. II(f), will always be triggered, along with the recapture provision. T95.

The plaintiff's initial contention that the ALJ's analysis was incomplete is easily disposed of. The ALJ considered the plaintiff's argument about the "actual grantor" at length, and concluded that the plaintiff's mother was the grantor for purposes of interpreting the Trust. T16. That was a reasonable conclusion, because that's what the Trust expressly says. T23. The ALJ simply did not find the plaintiff's argument to the contrary persuasive. And neither does the Court.[4]

The plaintiff cites *In re Nat'l Gypsum Co.*, 257 B.R. 184 (Bankr. N.D. Tex. 2000) for the proposition that the Court should look through the trust instrument to determine the source of the trust *res* in order to determine who the "actual grantor" is for the trust. Filing 14 at 6. Having reviewed *In re Nat'l Gypsum Co.*, the Court is unable to discern how it supports that proposition, particularly in this context. But the Court is willing to accept that there may be situations in which it is important to determine the source of the trust *res*. *See* POMS SI 01120.200(B)(2); *cf. Draper*, 779 F.3d at 563. This is not such a situation, because the question here is not the identity of the "grantor" for Social Security Act purposes—the question is who is authorized, by the Trust, to exercise the authority conferred by art. II(e) to appoint a residual beneficiary. And that is plainly the plaintiff's mother.

The plaintiff is essentially asking the Court to construe the Trust so that the "grantor" named on page 1 of the Trust instrument is not the "grantor" on page 3 of the Trust instrument. But a trust is only subject to construction if the language of the trust is not clear. *Thorson v. Neb. Dep't of Health & Human Servs.*, 740 N.W.2d 27, 33 (Neb. 2007). If the language clearly expresses the settlor's intent, the rules of construction do not apply. *Id.* There is no ambiguity in this instrument on this point.

And even if there was a latent ambiguity of some kind, the applicable rules of construction would still not help the plaintiff. The primary rule of construction for trusts is that a court must, if possible, ascertain the intention of the testator or creator. *In re Family Trust Created Under Akerlund Trust of January 6, 1974*, 784 N.W.2d 110, 114 (Neb. 2010). In interpreting a trust, the entire instrument, all its parts, and its general

---

[4] And that's a good thing for the plaintiff, too. The plaintiff seems not to have thought through the implications of his argument: if the plaintiff's mother is not the "grantor," then there is a very real chance that the Trust was not "established for the benefit of [the plaintiff] through the actions of a parent, grandparent, legal guardian or a court." *See* POMS SI 01120.203(B)(1)(a). And if that was the case, the plaintiff's opportunity to create a special needs trust might have been irrevocably lost. *See Draper*, 779 F.3d 556.

purpose and scope are to be considered; no parts are to be disregarded as meaningless if any meaning can be given them consistent with the rest of the instrument. *Id.* But the plaintiff is asking the Court to look outside the four corners of an unambiguous instrument in order to flatly contradict the plain language of art. I(d)—and to do so for the express purpose of reading art. II(e) out of the Trust as well. In the process, the Court would be required to endorse a number of untenable conclusions about the settlor's intent. For instance, in the event of the plaintiff's death, if he has no living descendants, the residual beneficiary of the Trust is the grantor. So, not only would arts. I(d) and II(e) be dead letters—the Court would also need to find that the settlor intended for the plaintiff's residual beneficiary to be the tortfeasors with whom he had settled a tort claim. There is, in short, no sense to the plaintiff's proposed construction of the Trust instrument.[5]

### NDHHS Determination

The plaintiff argues that the ALJ should have followed the determination made by the NDHHS that the Trust was an exempt resource. Filing 14 at 6-9. He asserts that the NDHHS uses the same criteria for evaluating a trust for Medicaid eligibility purposes as the SSA uses for SSI purposes.[6] Filing 14 at 8. So, he says, the NDHHS determination was "substantial evidence in the record as a whole" to support a finding in his favor.[7] Filing 14 at 8. And he criticizes the ALJ for noting, in a parenthetical, that the NDHHS determination was "not contained on record." T16.

---

[5] And even beyond that, the plaintiff does not adequately explain why the "actual grantor" would not still be authorized by the Trust instrument to designate a residual beneficiary in the event of early termination, thereby avoiding the recapture provision. The plaintiff asserts that "[t]he order of the County Court did not give the hospital and/or the physician and/or their insurer any other authority regarding the trust other than to fund same." T90. The county court, however, specifically approved the Trust instrument. T35. It is not clear why the county court would need to authorize the exercise of authority conferred by that instrument. But the Court has gone too far down this rabbit hole already.

[6] The government claims that it is "unsubstantiated" whether the same resource-counting provisions are used by the SSA and the NDHHS. Filing 17 at 8. On that point, at least, the Court disagrees. *Compare* POMS SI 01120.203(B)(1)(a) *with* 477 Neb. Admin. Code § 21-001.15A13b(1)(a) (2014).

[7] The plaintiff's argument turns the Court's standard of review on its head. Asking whether the ALJ's decision was supported by substantial evidence is the same as asking whether there was enough evidence to support the decision—in other words, the question is *not* whether there may have been evidence pointing the other way. It is entirely possible to have substantial evidence on both sides, and if the ALJ's decision is supported by substantial evidence, it should be affirmed even if substantial evidence would also support

To begin with, there was evidently some question about whether the NDHHS letter referencing the Trust—which was attached to another letter, which was attached to the hearing request form—was properly placed before the ALJ. *See* T8. And the letter itself refers to the existence of a decision, but does not clearly explain its scope or basis.

But leaving that aside, the ALJ quite clearly accepted the existence of the decision—he simply disagreed with it. And he was free to do so. It is true that in some contexts, such as a disability determination, the ALJ should consider another agency's findings. *See, e.g., Pelkey v. Barnhart,* 433 F.3d 575, 579-80 (8th Cir. 2006); *Morrison v. Apfel,* 146 F.3d 625, 628 (8th Cir. 1998); *Jenkins v. Chater,* 76 F.3d 231, 233 (8th Cir. 1996). But they are not binding. *See id.* And the terms of a trust created by a written instrument are determined as a matter of law. *Cf., Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111-13 (1989); *Akerlund Trust,* 784 N.W.2d at 114. The Court can see no compelling reason why the ALJ would have been required to defer to another agency's decision on what was, essentially, a question of law—particularly when that agency's reasoning was not explained in the record.

### MOTHER'S FIDUCIARY DUTY AS GUARDIAN

Finally, the plaintiff argues that because the plaintiff's mother is also his guardian,

> she has fiduciary obligations to her ward which are limited by the powers enumerated in the court's order. It is not permissible for a person in a fiduciary capacity to utilize his or her position for the agent's or a third party's benefit in a substantially gratuitous transfer. As such, under the provisions of [art. II(e) of the Trust] the mother cannot exercise any action other than to have the proceeds of the trust distributed "in accordance with paragraph (f) of this article."

Filing 14 at 9-10 (citations omitted).

There are three problems with this argument. First, the Court cannot find where, if at all, it was presented to the ALJ. *See* T89-99. And generally, a party seeking judicial review of an agency action must exhaust available agency remedies and may not proceed upon an argument not made to the agency. *See, McCarthy v. Madigan,* 503 U.S. 140, 144–45 (1992); *Nasser v. Astrue,* 248 F. App'x 766, 768 (8th Cir. 2007); *Harwood v. Apfel,* 186 F.3d 1039, 1042 (8th Cir. 1999). Second, the fact that the plaintiff's mother is

---

the opposite outcome. *See, Smith v. Colvin,* 756 F.3d 621, 625 (8th Cir. 2014); *Medhaug v. Astrue,* 578 F.3d 805, 813 (8th Cir. 2009).

*currently* both the grantor of the Trust and the plaintiff's guardian does not mean it will always be so. Someone else could be named as guardian at any time, meaning that the fiduciary duty upon which the plaintiff relies would be relieved. And finally, the Court cannot see why the guardian's fiduciary duty to the plaintiff would require her, in the event of early termination, to distribute the Trust principal to the plaintiff's heirs pursuant to art. II(f), as if he was dead. That would, in fact, seem to run counter to any fiduciary obligation to act solely for the plaintiff's benefit. *See In re Estate of Hedke,* 775 N.W.2d 13, 29 (Neb. 2009). There are any number of ways for art. II(e) of the Trust to escape recapture, even when the guardian and grantor are the same person.

## CONCLUSION

For the foregoing reasons, the Court finds no merit to the plaintiff's arguments that the ALJ erred in determining that the Trust, as originally executed, was a countable resource for purposes of SSI eligibility. The ALJ's decision was not contrary to law, and it was supported by substantial evidence. Therefore, the Court finds that the Commissioner's decision should be affirmed.

IT IS ORDERED:

1. The Commissioner's decision is affirmed.

2. The plaintiff's complaint is dismissed.

3. The parties shall bear their own costs.

4. A separate judgment will be entered.

Dated this 17th day of April, 2015.

BY THE COURT:

John M. Gerrard
United States District Judge